IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-137

No. 182PA21

Filed 16 December 2022

STATE OF NORTH CAROLINA

v.

JAQUAN STEPHON GETER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 276 N.C. App. 377, 2021-NCCOA-98, affirming two judgments entered on 15 July 2020 by Judge R. Gregory Horne in Superior Court, Buncombe County, which revoked defendant's probation. Heard in the Supreme Court on 24 May 2022 in session in the Old Burke County Courthouse in the City of Morganton pursuant to N.C.G.S. § 7A-10(a).

*Joshua H. Stein, Attorney General, by Liliana R. Lopez, Assistant Attorney General, for the State-appellee.*

*Jason Christopher Yoder for defendant-appellant.*

MORGAN, Justice.

This Court allowed discretionary review to determine whether the Court of Appeals erred in affirming a trial court's judgments revoking defendant's probation entered over a year after defendant's term of probation had expired. Because the trial court complied with the requirements of N.C.G.S. § 15A-1344(f)(3), it possessed the jurisdiction to revoke defendant's probation after defendant's term of probation had

expired and further did not abuse its discretion in determining that good cause existed for doing so after defendant's term of probation had expired. Accordingly, the Court of Appeals decision is affirmed.

## I. Facts and Procedural History

¶ 2       Defendant pleaded guilty to possession of a firearm by a felon, resisting a public officer, possession of a stolen motor vehicle, and fleeing to elude arrest on 29 August 2016 and was sentenced by the trial court to a total active term of twenty-two to forty-five months which was suspended in favor of an eighteen-month term of supervised probation. While defendant was still on probation, the Asheville Police Department executed a search warrant on defendant's residence on 18 January 2017 after conducting a series of controlled purchases of narcotics from defendant using a confidential informant. Upon executing the warrant, police recovered marijuana, defendant's identification card which was situated on top of a digital scale, razor blades, a black ski mask, a .380 caliber pistol, and over $1,200 in cash. Of the recovered money, $40.00 had been used in an earlier controlled purchase of narcotics from defendant. On 23 April 2017, defendant was charged with possession of a firearm by a felon, possession of marijuana, possession of drug paraphernalia, and maintaining a dwelling for the purpose of keeping or selling controlled substances. On 9 February 2018 and 12 February 2018, defendant's probation officer served and filed violation reports for each case of probation which alleged that defendant had

committed new criminal offenses while on probation and listed the pending charges which had resulted from the execution of the search warrant. Defendant's probation expired on 28 February 2018, more than two weeks after he was served with the probation violation reports.

¶ 3        Defendant filed a motion to suppress the evidence which was seized during the search of his residence. The trial court granted defendant's motion on 22 February 2019, determining that the underlying warrant was too general in that it did not specify which of the two units of the duplex where defendant resided was the focus of the search. The State dismissed the charges against defendant on 17 March 2019. Defendant's pending probation violation reports came on for hearing on 4 April 2019, at which time the State called the detectives who had executed the search warrant. Defendant's probation violation hearing consisted of the detectives' testimony, by which all of the items seized during the execution of the warrant—including the marijuana, firearm, and digital scales—were admitted as evidence that defendant had committed a new criminal offense while on probation. The trial court, finding that defendant had committed a new criminal offense while on probation, revoked defendant's probation. Defendant appealed the trial court's judgments to the Court of Appeals.

¶ 4        The State conceded, and the Court of Appeals agreed, that the trial court had failed to specify which of the criminal offenses committed by defendant would serve

as the basis for revocation, and that the trial court had failed to find whether good cause existed to revoke defendant's probation after the probationary period had expired as required by N.C.G.S. § 15A-1344(f)(3). *State v. Geter* (*Geter I*), No. COA19-846, 2020 WL 3251033, at *5 (N.C. Ct. App. June 16, 2020) (unpublished). The Court of Appeals remanded the case for clarification from the trial court as to which criminal offense the trial court had determined that defendant had committed which would serve as the basis for revocation, and further remanded for new proceedings concerning whether good cause existed to revoke defendant's probation after his term of probation had expired. *Geter I*, 2020 WL 3251033, at *5–6.

On 15 July 2020, the trial court conducted a hearing on whether good cause existed to revoke defendant's probation after the expiration of his term and found that the State had intentionally delayed setting the probation violation report for a hearing as part of the State's normal practice to allow a probationer's pending charges to be resolved prior to the pending probation violation hearing. The resolution of defendant's outstanding charges would have a likely dispositive effect on the alleged probation violations, according to the trial court. The trial court announced the following:

> [W]hile the [c]ourt recognizes that the [c]ourt can proceed with regard to a probation violation hearing alleging pending charges prior to a person's conviction on those underlying offenses, the [c]ourt further acknowledges that in this case the underlying offenses were contested. That a Motion to Suppress was filed, heard, and granted by this

[c]ourt.

. . . .

While the State could have proceeded with regard to probation violation before the new offenses alleged were adjudicated, the State did not do so. That the State chose to prosecute the underlying action. Again, the Motion to Suppress was heard at the jury term. . . .

The [c]ourt would find that this does constitute good cause in that if the State — if Mr. Geter had been found not guilty of those offenses, or if for whatever reason the State had opted to dismiss the charges, that it would have had a direct impact on the later hearing of the probation violation.

Again, as reviewed — as shown in the transcript, as well as the knowledge by this [c]ourt having heard the Motion to Suppress, and then argument on the Motion to Suppress, having been granted after probation violation, it is clear to the [c]ourt that the State waited until disposition of the underlying offenses alleged before proceeding with the probation violation. The [c]ourt would find that this would constitute good cause.

The trial court reduced its finding of good cause to new judgments which revoked defendant's probation and announced, "[The] court finds and concludes good cause exists to revoke defendant's probation despite the expiration of his probationary period." The judgments were entered on 15 July 2020 but related back to the original probation violation hearing on 4 April 2019.

¶ 6    Defendant appealed this second set of judgments revoking his probation, arguing before the Court of Appeals that "the 'good cause' found by the trial court failed as a matter of law" to satisfy N.C.G.S. § 15A-1344(f)(3) according to defendant's

interpretation of the opinion of the lower appellate court in *State v. Sasek*, 271 N.C. App. 568 (2020). The Court of Appeals affirmed the trial court's second set of judgments revoking defendant's probation. *State v. Geter* (*Geter II*), 276 N.C. App. 377, 2021-NCCOA-98. The Court of Appeals concluded that *Sasek* was inapplicable because the judicial panel in the case vacated the defendant's probation revocation judgments not because there was evidence to suggest that any "good cause" that could be inferred from the record was legally sufficient or insufficient, but specifically because "there was *no* evidence in the record to indicate that good cause existed to justify the untimely revocation." *Id.* ¶ 11 (emphasis added). The trial court in *Sasek* "erred by not making the required finding that good cause existed," *id.* ¶ 12 (emphasis omitted) (quoting *Sasek*, 271 N.C. App. at 576), unlike the trial court in the instant case which, upon remand, provided both a written finding of good cause "supported by the facts in the record" and an oral explanation of the reasoning behind the findings, *id.* ¶ 13. Because the state's jurisprudence and statutory enactments were devoid of any factors or standard to apply in evaluating a finding of good cause, and because the trial court had in fact made the good cause finding required by N.C.G.S. § 15A-1344(f)(3), the Court of Appeals concluded that the trial court had not abused its discretion in revoking defendant's probation despite the "significant and unadvisable" delay between the expiration of defendant's probation and the final probation revocation hearing. *Id.* ¶ 15. Defendant petitioned this Court for

discretionary review of the unanimous decision of the Court of Appeals in *Geter II* which we allowed by order on 10 August 2021.

## II. Analysis

Defendant first takes issue with the application of an abuse of discretion standard by the Court of Appeals in the lower appellate court's analysis of the trial court's finding of good cause. We agree with defendant that whether a trial court has the authority to revoke a defendant's probation after the defendant's term of probation has expired is a jurisdictional question. *State v. Camp*, 299 N.C. 524, 528 (1980) (holding that "jurisdiction was lost by the lapse of time and the court had no power to enter a revocation judgment" because the trial court had failed to make a finding required by an earlier version of N.C.G.S. § 15A-1344(f)); *State v. Bryant*, 361 N.C. 100, 103 (2006) ("In the absence of statutorily mandated factual findings, the trial court's jurisdiction to revoke probation after expiration of the probationary period is not preserved."). "We review issues relating to subject matter jurisdiction de novo." *State v. Oates*, 366 N.C. 264, 266 (2012). Therefore, with regard to the statutory authority at issue in this case, a trial court's jurisdiction to revoke a defendant's probation after the expiration of that defendant's probationary term is established

> if all of the following apply:
>
> (1) Before the expiration of the period of probation the State has filed a written violation report with the clerk indicating its intent to conduct a hearing on one or more violations of one or more conditions of probation.

> (2) The court finds that the probationer did violate one or more conditions of probation prior to the expiration of the period of probation.
>
> (3) The court finds for good cause shown and stated that the probation should be extended, modified, or revoked.

N.C.G.S. § 15A-1344(f)(1)–(3) (2021). The three enumerated conditions precedent to the trial court's jurisdiction to revoke a defendant's probation after the expiration of the term of probation are separate and distinct from one another.

> Subsection (f)(2) of N.C.G.S. § 15A-1344 makes clear that in order to revoke a defendant's probation following the expiration of his probationary term, the trial court must first make a finding that the defendant did violate a condition of his probation. After making such a finding, trial courts are then required by subsection (f)(3) to make an *additional* finding of "good cause shown and stated" to justify the revocation of probation even though the defendant's probationary term has expired.

*State v. Morgan*, 372 N.C. 609, 617 (2019).

¶ 8    In *State v. Rankin*, this Court analyzed the provision contained in N.C.G.S. § 15A-805 that a trial court must enter an order compelling the attendance in court of any incarcerated person so long as the movant produces "good cause *shown*." 312 N.C. 592, 597 (1985) (emphasis added). The *Rankin* defendant had filed a motion to compel the attendance of five witnesses at his trial for first-degree sexual offense one day before the trial was calendared to begin. *Id.* at 595. Without providing the defendant's attorney with an opportunity to show the good cause underlying counsel's request for the attendance of one of the witnesses, the trial court denied defendant's motion "on

the grounds that (1) no affidavits were submitted as to why the witness should be brought to court; (2) the witness did not testify at the previous trial; and (3) the witness's presence was requested at a late date." *Id*. at 598. In reversing the trial court's decision to deny the *Rankin* defendant's motion to compel the attendance of his proposed witness, this Court explained:

> Certainly the statute does not *require* that affidavits be submitted to show the "good cause" requirement of the statute. Neither can we find [a] viable reason why a witness must have testified in a previous trial in order to be subject to production as a witness for any other given trial. We do recognize, however, that a trial judge has the duty to supervise and control the course and conduct of a trial, and that in order to discharge that duty he is invested with broad discretionary powers. *Shute v. Fisher*, 270 N.C. 247, 154 S.E.2d 75 (1967).
>
> A late filed motion might delay the course of a trial and invite dilatory tactics by other parties to litigation. Therefore in [the] instant case it was incumbent on defendant to show substantial reasons why his motion to produce and compel the presence of the witness . . . was not filed until the day before the trial was to commence. Our examination of this record discloses, however, that defendant's motion was denied without permitting him to show the "good cause" requirement of the statute or to advance any reasons, if any he had, why the motion was made at the eve of the trial. For this reason, under the particular facts of this case, we hold that defendant was effectively denied his right of compulsory process.

*Id*. at 598–99.

¶ 9    The "good cause" discussed by this Court in *Rankin* contained within it at least two factors: implicitly, the reason why the attendance of the witness would be

material to the defendant's trial strategy, and explicitly, the reason why the defendant's motion to compel the attendance of the witness was filed only one day prior to the start of trial. In superimposing these factors over the otherwise undefined good cause required to be shown by the statute at issue in *Rankin*, this Court focused on "the particular facts of this case," *id.* at 599. Similarly, in the present case, N.C.G.S. § 15A-1344(f)(3) "wisely makes no attempt to enumerate" what constitutes good cause, instead leaving "it to the judge to determine," *Shankle v. Shankle*, 289 N.C. 473, 483 (1976). Consistent with our determinations in *Rankin* and *Morgan*, the "good cause" contemplated by N.C.G.S. § 15A-1344(f)(3) therefore must be shown by the State, as the proponent of the " 'good cause shown and stated' to justify the revocation of probation even though the defendant's probationary term has expired" and determined by the trial court, pursuant to its "broad discretionary powers." Unfortunately, the dissent fails to appreciate the established soundness of the abuse of discretion standard which the appellate courts have routinely applied to the review of trial courts' "good cause" determinations and would instead prefer a list of parameters to guide and direct such discretionary matters.

¶ 10     N.C.G.S. § 15A-1344(f)(3) also requires that the good cause to revoke a defendant's probation be "stated." Given the proximity and relation of the word "stated" to the aforementioned term "shown" within the language of the statute,

> [w]e are . . . guided in our decision by the canon of statutory construction that a statute may not be

interpreted in a manner which would render any of its words superfluous. This Court has repeatedly held that a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage.

*Morgan*, 372 N.C. at 614 (extraneity omitted). To avoid interpreting the requirement of N.C.G.S. § 15A-1344(f)(3) that good cause be "shown and stated" as imposing a redundant burden on the State, we hold that the good cause found by the trial court must be "stated" on the record, either in open court by the trial court, by a party with the trial court's endorsement, or within the trial court record.

¶ 11 It is undisputed that written probation violation reports were filed with the clerk of court against defendant by the State prior to the expiration of defendant's term of probation or that the trial court found—as was amply supported by the evidence—that defendant had in fact violated a condition of his probation by, at the least, being in possession of a firearm as a felon while on probation. The trial court, after receiving the "showing" by the State, explicitly found both orally and in writing that "good cause exists to revoke defendant's probation despite the expiration of his probationary period." The trial court went on to satisfy its statutory requirement by both finding good cause and "stating" in open court the basis for its finding of good cause.

¶ 12 The question before this Court, therefore, is whether the "good cause" found by

the trial court in this case is legally sufficient to justify the trial court's exercise of its jurisdiction which is established by the strict adherence of the circumstances of this case, as described above, to the enumerated conditions of N.C.G.S. § 15A-1344(f)(3). In other instances where this Court has reviewed a trial court's evaluation of good cause, we have deferred to the trial court's intimate view of the circumstances of each case as the factfinder. *In re S.M.*, 375 N.C. 673, 681 (2020) (holding that a trial court's determination of the existence of "extraordinary circumstances" and "good cause" justifying a continuance in a termination of parental rights matter is reviewed for an abuse of discretion); *State v. Murphy*, 321 N.C. 738, 740–41 (1988) (holding that there was no error in a judgment when the trial court failed to find good cause in a defendant's request to sequester potential jurors during a capital murder trial); *Peebles v. Moore*, 48 N.C. App. 497, 504 (1980), *aff'd as modified*, 302 N.C. 351 (1981) ("What constitutes 'good cause' depends on the circumstances in a particular case, and within the limits of discretion, an inadvertence which is not strictly excusable may constitute good cause . . . ."). Even in the employment context, where our search of the state's jurisprudence has revealed a prevalent use of the phrase "good cause," the existence or dearth of good cause is, absent a statutory standard of review, "a matter for the factfinder . . . to decide." *Intercraft Indus. Corp. v. Morrison*, 305 N.C. 373, 377 (1982). Whether the jurisdictional requirements of N.C.G.S. § 15A-1344(f)(3) are satisfied is a question of law: (1) whether a probation violation report was filed

prior to the expiration of the defendant's probation; (2) whether the trial court found that the defendant violated one or more conditions of his or her probation; and (3) whether the trial court found good cause "that the probation should be extended, modified, or revoked." *See* N.C.G.S. § 15A-1344(f)(3). But whether good cause exists, being fact-intensive and dependent on the circumstances which result in the delay of a probation revocation hearing, is a finding of fact delegated to the discretion of the trial court.

¶ 13    What constitutes "good cause shown and stated" is a case-by-case, fact-specific determination which requires a trial court to consider the particular circumstances which mandate that good cause be shown. In probation violation hearing matters governed by N.C.G.S. § 15A-1344(f)(3) and its requirement of the existence of good cause in order for the trial court to be authorized to revoke probation after the period of probation has expired, we also find guidance in this Court's treatment of continuance motions which are to be allowed upon "good cause shown." In *Shankle*, this Court examined a situation in which a group of respondents in an estate action filed a motion to continue the trial after their retained counsel "left the court after the judge made strong remarks about respondents." 289 N.C. at 478 (extraneity omitted). Now without counsel, the respondents in *Shankle* attempted to represent themselves after the trial court denied their joint continuance motion without providing a reason for the denial, which resulted in "obfuscation, judicial frustration,

and mounting tensions all around." *Id*. at 479. This Court reviewed the trial court's

denial of the continuance motion for an abuse of discretion, while noting that Rule

40(b) of the North Carolina Rules of Civil Procedure provided that continuances "may

be granted only for good cause shown and upon such terms and conditions as justice

may require." *Id*. at 482 (quoting N.C.G.S. § 1A-1, Rule 40(b)). This Court looked with

favor upon the absence of any factors or definitions of "good cause" within the rule, in

light of the wide array of reasons which may be asserted by a party wishing to obtain

a continuance. This Court explained:

> Considering the myriad circumstances which might be urged as grounds for a continuance[, N.C.G.S. § 1A-1, Rule 40(b)] wisely makes no attempt to enumerate them but leaves it to the judge to determine, in each case, whether "good cause" for a continuance has been shown. Thus, a motion to continue is addressed to the sound discretion of the trial judge, who should determine it as the rights of the parties require under the circumstances. However, this discretion is not unlimited, and must not be exercised absolutely, arbitrarily, or capriciously, but only in accordance with fixed legal principles.
>
> Further, before ruling on a motion to continue the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice.

*Id*. at 482–83 (extraneity omitted). We find this logic to be both compelling and

appropriate for the case at bar. Considering the vast variety of circumstances which

might justify the extension, modification, or revocation of a criminal defendant's

probation after the expiration of the defendant's term of probation, N.C.G.S. § 15A-

1344(f)(3) does not delineate or describe any of them, but merely prescribes that, in each case, it is up to the trial court to decide whether "good cause" to extend, modify, or revoke a defendant's probation after the expiration of the term of probation has been shown. The trial court's discretion in this matter "must not be exercised absolutely, arbitrarily, or capriciously, but only in accordance with fixed legal principles." *Id*. at 483 (quoting 17 C.J.S. Continuances § 5 (1963)). "In reaching its conclusion the court should consider all the facts in evidence, and not act on its own mental impression or facts outside the record, although . . . it may take into consideration facts within its judicial knowledge." *Id*. (alteration in original) (quoting 17 C.J.S. Continuances § 97). Finally, the trial court's "chief consideration" in determining whether a defendant's probation should be revoked despite the expiration of the term of probation is whether "substantial justice" would be advanced or offended by the post-expiration revocation. *Id*. (quoting 17 C.J.S. Continuances § 97). However, despite this Court's recognition in *Shankle* that a trial court's "sound discretion" to determine good cause from any number of any combination of any series of circumstances in a variety of cases—including probation violation hearings in which actions taken after the expiration of probation are dependent upon the existence of good cause—"is not unlimited, and must not be exercised absolutely, arbitrarily, or capriciously, but only in accordance with fixed legal principles," nonetheless the dissent would prefer to more rigidly define and curtail a trial court's

ability to find "good cause" in its discretion.

¶ 14            Applying an abuse of discretion standard to the trial court's finding that good cause existed in this case to revoke defendant's probation over a year after the expiration of defendant's term of probation, we do not conclude that the trial court's decision was arbitrary, capricious, or offended substantial justice. The record in this case demonstrates the manner in which both defendant and the State were benefited by the trial court's determination of the existence of good cause. The probation officer filed probation violation reports against defendant on 9 February 2018 and 12 February 2018—two weeks prior to the expiration of his probation, but ten months after defendant had been criminally charged for the behavior which served as the basis for the State's efforts to revoke defendant's probation. However, on all relevant dates, criminal charges *were* pending against defendant for behavior in which he allegedly engaged while he was on probation. Defendant's probation expired on 28 February 2018. Defendant filed a motion to suppress the evidence which supported the criminal charges against him almost a year after his probation had expired. The motion was heard and granted on 22 February 2019 by the same trial court which heard both defendant's probation revocation matter and the hearing on remand to determine the existence of good cause. The State dismissed the charges against defendant on 17 March 2019. Less than a month later, the State brought forward the probation violation reports against defendant for hearing on 4 April 2019. Both the

State and defendant had the potential benefit of the delay in the occurrence of the probation violation hearing until after the resolution of defendant's new criminal charges as reflected in the trial court's stated rationale for finding good cause:

> [I]f [defendant] had been found not guilty of those offenses, or if for whatever reason the State had opted to dismiss the charges, . . . it would have had a direct impact on the later hearing of the probation violation.
>
> Again, as reviewed — as shown in the transcript, as well as the knowledge by this [c]ourt having heard the Motion to Suppress, and then argument on the Motion to Suppress, having been granted after probation violation, it is clear to the [c]ourt that the State waited until disposition of the underlying offenses alleged before proceeding with the probation violation. The [c]ourt would find that this would constitute good cause.

The fact that the State's dismissal of defendant's underlying charges did not have a "direct impact on the later hearing of the probation violation" is a product of hindsight, not the trial court's weighing of "the rights of the parties." *Shankle*, 289 N.C. at 483 (quoting 17 C.J.S. Continuances § 5). After all, the State dismissed the charges against defendant after it was discovered that the evidence was collected as the result of a search warrant which did not specify which of the two duplex units where defendant resided was the subject of the search, not after the evidence against defendant was presented to a jury. Meanwhile, the State was afforded the opportunity to await the outcome of defendant's trial on the new criminal charges and the potential effect on the probation violation allegations, in the event that

defendant was found guilty of the underlying charges.

¶ 15 Defendant further asserts that the Court of Appeals violated the principle of stare decisis and this Court's holding in *In re Civil Penalty*, 324 N.C. 373 (1989), by "fail[ing] to apply two key holdings from its own prior published and binding precedent in *State v. Sasek*." We disagree. The lower appellate court properly concluded that *Sasek* did not apply in the current case because, even if the trial court had made the required finding of good cause in *Sasek*, and the record had contained evidence to support an inferred existence of good cause in that case, the issue of the sufficiency of any good cause which may have existed was not before the Court of Appeals in *Sasek*; therefore, any comment on the issue by the Court of Appeals would constitute dicta and would also, in any event, remain discretionary in its application before this Court. Furthermore, defendant's citation to *Sasek* is ineffectual in light of his argument that *Sasek* stands for the proposition that any "reasonable efforts" undertaken by the State to hold the revocation hearing earlier or before the expiration of his term of probation is a factor to consider in determining whether there is "good cause shown and stated" to revoke his probation after the term had expired. In *Sasek*, the Court of Appeals recalled its observation in *Morgan* that a probation revocation judgment should only be remanded, as opposed to vacated, when "the record contain[s] sufficient evidence to permit the necessary finding of 'reasonable efforts' by the State to have conducted the probation revocation hearing

earlier." *Sasek*, 271 N.C. App. at 575 (alteration in original) (quoting *Morgan*, 372 N.C. at 618). The lower appellate court's citation to, and discussion of, this statement from *Morgan* in the Court of Appeals' *Sasek* opinion is misplaced and misleading within the context of reviewing the good cause requirement of N.C.G.S. § 15A-1344(f). In the present case, the dissent has also succumbed to this miscalculated reliance on the concept of "reasonable efforts," while erroneously and curiously claiming that the statute requires a demonstration of *both* reasonable efforts *and* good cause, when N.C.G.S. § 15A-1344(f) doesn't mention "reasonable efforts." The Court in *Morgan*, in referencing the "reasonable efforts" undertaken by the State to conduct the revocation hearing earlier, referred to this Court's decision in *Bryant*. *Morgan*, 372 N.C. at 618 (citing *Bryant*, 361 N.C. at 104). *Bryant*, in turn, analyzed the version of N.C.G.S. § 15A-1344(f) which was existent at the time, and which explicitly required a trial court to find "that the State has made reasonable effort to notify the probationer and to conduct the hearing earlier." 361 N.C. at 102 (emphasis omitted) (quoting N.C.G.S. § 15A-1344(f)(2) (2005)). However, the Legislature unequivocally eliminated the trial court's necessity to consider the State's reasonable efforts to conduct the hearing at an earlier time with the passage of Session Law 2008-129, which replaced the *one* "reasonable effort" finding earlier required by N.C.G.S. § 15A-1344(f)(2) with *two* findings which presently must be determined by a trial court: N.C.G.S. § 15A-1344(f)(2) requires a finding that the "probationer did violate one or more conditions

of probation prior to the expiration of the period of probation" and N.C.G.S. § 15A-1344(f)(3) requires a finding of "good cause shown and stated that the probation should be extended, modified, or revoked." 2008 N.C. Sess. Law 129, § 4; N.C.G.S. § 15A-1344(f) (2021). Therefore, *Morgan* does not stand for the proposition, as argued by defendant, that the reasonable efforts undertaken by the State to hold the probation revocation hearing at an earlier date must be shown to, or found by, the trial court as a prerequisite to the trial court exercising its jurisdiction in extending, modifying, or revoking a defendant's probation after the term of probation has expired.

## III.    Conclusion

The trial court complied with the provisions of N.C.G.S. § 15A-1344(f) and therefore possessed the jurisdiction to revoke defendant's probation after his term of probation had expired. Specifically, pursuant to N.C.G.S. § 15A-1344(f)(3), the trial court did not abuse its discretion in determining that good cause existed for the revocation of defendant's probation after his term of probation had expired. We therefore affirm the Court of Appeals decision for the reasons stated herein, and the trial court's judgments revoking defendant's probation are given full force and effect.

AFFIRMED.

Justice EARLS dissenting.

¶ 17        The majority here holds that because the trial court "complied with N.C.G.S. § 15A-1344(f)(3)," it has jurisdiction to revoke defendant's probation 399 days after it expired and did not abuse its discretion in finding good cause for the delay. Because I disagree on both points and conclude that the majority's decision provides inadequate guidance to trial courts, I respectfully dissent.

¶ 18        Though trial courts are rightfully afforded a high degree of discretion in making certain fact-intensive determinations, that discretion must be exercised within clear and consistent boundaries in order to safeguard fundamental constitutional principles of due process. These boundaries are particularly important in criminal law, in which a trial court's discretionary rulings—like those involving the revocation of probation and institution of a term of active incarceration—can directly and severely impact basic personal liberties. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (observing that "the loss of liberty entailed [in probation revocation] is a serious deprivation" thus requiring the protections of due process).

¶ 19        Below, the Court of Appeals ruled that there is "no specific set of factors that must be considered in evaluating whether 'good cause' exists [for post-expiration probation revocation] under [N.C.G.S.] 15A-1344(f)(3)." *State v. Geter*, 267 N.C. App. 377, 2021-NCCOA-98, # 14. In my view, that ruling untethers the trial court's

discretion from "fixed legal principles," thereby running afoul of constitutional protections against statutory vagueness and inviting inconsistent applications of the law. *Shankle v. Shankle*, 289 N.C. 473, 483 (1976). Further, it is the proper role of appellate courts to provide lower courts with certain minimum guidance regarding the contours of these constitutional guardrails. While the majority observes that there are *some* general limits on a trial court's discretion, it does not state those limits with sufficient specificity to avoid unconstitutional vagueness and inconsistency in future determinations of "good cause" for probation revocation under N.C.G.S. § 15A-1344(f)(3).

¶ 20 Although the relevant statute plainly gives trial courts significant discretion in making this determination, the legislature could not have given trial courts the kind of virtually unreviewable discretion to trial courts the majority confers here, nor did it intend to do so. Such discretion will lead to unpredictable application of the "good cause" standard across the state; as a result, defendants will have little notice of what constitutes "good cause" to warrant revocation of probation after their probationary period has expired and no real idea how any given trial court will treat their case.

¶ 21 It is the function of appellate courts to interpret broad legislation that is susceptible to multiple meanings and provide guidance for trial courts tasked with applying statutes in the first instance. *See, e.g.*, *State v. Starr*, 365 N.C. 314, 319

(2011) ("We pause to provide guidance to trial court judges" regarding how to "exercise [their] discretion" in order "to ensure compliance with N.C.G.S. § 15A-1233(a)."); *In re J.F.*, 237 N.C. App. 218, 227 (2014) ("We briefly address this jurisdictional issue to provide guidance to trial courts faced with similar situations in the future."). Here, the text and purpose of N.C.G.S. § 15A-1344(f)(3) demonstrate that there are limits to a trial court's discretion under these circumstances. Trial courts must make express findings of fact demonstrating that there is "good cause" to revoke probation. "Good cause" is not just whatever a trial court thinks reasonable on a given day; "good cause" necessarily incorporates an assessment of whether the State made reasonable efforts to hold the revocation hearing before the probationary period ended. Moreover, while delaying a probation revocation hearing to allow for the disposition of underlying charges may sometimes be "good cause" for a delay, that is true only when the outcome of those charges has some impact on a trial court's "good cause" determination. The State may not require defendants to wait *years* for their revocation hearings under the guise that the disposition of their new charges will be relevant, then proceed with revocation even though those charges have been dismissed. Under these circumstances, the delay is without purpose and cannot constitute "good cause." Accordingly, I respectfully dissent.

## I.    Background

¶ 22        Jaquan Stephon Geter began serving eighteen months of supervised probation on 29 August 2016. During his probation, the State charged Mr. Geter with new criminal offenses after a SWAT-team illegally searched Mr. Geter's home and found drug paraphernalia, a pistol with ammunition, and cash, $40 of which had been used to purchase contraband pursuant to the investigation. On 22 February 2019, a trial court determined the evidence the SWAT-team obtained during the search had to be suppressed because they obtained it pursuant to an illegal warrant. The State subsequently dismissed these charges against Mr. Geter.

¶ 23        The State had no obligation to wait until those new charges were disposed before seeking to revoke Mr. Geter's probation. *See, e.g., State v. Crompton*, 380 N.C. 220, 2022-NCSC-14, ¶ 11 (noting that the trial court "found that the defendant had violated the condition of his probation to 'commit no criminal offense' " based on its determination that he committed new offenses and charges were pending). Although the State was aware of these new charges—as well as other violations of his probation, such as Mr. Geter's failure to complete his assigned community service hours and his GED—the State did not file probation violation reports immediately. Instead, the State waited 387 days after the alleged criminal conduct to file violation reports and an additional 399 days after Mr. Geter's probation expired to hold his revocation hearing. In total, 806 days elapsed between the alleged criminal conduct and Mr. Geter's probation revocation.

¶ 24        Mr. Geter's probation hearing occurred over a year later on 4 April 2019. At that hearing, the State presented the illegally obtained evidence to support revocation. The trial court revoked Mr. Geter's probation but failed to make a finding of "good cause" for revoking his probation after the expiration of the probationary period. On direct appeal, the Court of Appeals reversed the trial court's revocation because (1) the trial court had failed to make a finding of "good cause," and (2) it was ambiguous whether the court impermissibly revoked Mr. Geter's probation for a class three misdemeanor. *State v. Geter* (*Geter I*), No. COA19-846, 2020 WL 3251033 (N.C. Ct. App. June 16, 2020).

¶ 25        At his second revocation hearing on 15 July 2020, Mr. Geter argued that because the State could have held the revocation hearing prior to the disposition of the underlying drug charges, the State did not have "good cause" to revoke his probation after the probationary period had expired. The State, although acknowledging that it did have the ability to hold revocation hearings prior to disposition, emphasized that it delays proceedings in "every single case" involving allegations of new criminal conduct. Otherwise, the State argued, "we would be having hearings all the time." Additionally, the State noted that Buncombe County only holds one criminal session per week and probation hearings once every two weeks and that "99 percent of the time, if the underlaying evidence is suppressed or charges dismissed, the [S]tate does not pursue the revocation." The State contended

that it "allowed the probation matter to be continued to afford Mr. Geter an opportunity to have his trial." After hearing these arguments, the trial court found that "it is clear to the [c]ourt that the State waited until disposition of the underlying offenses alleged before proceeding with the probation violation. The [c]ourt would find that this would constitute good cause."

¶ 26        Mr. Geter again appealed, arguing that the trial court erred because (1) "the record did not contain evidence the State made reasonable efforts to hold the hearing prior to expiration of probation" and (2) the idea that waiting for underlying criminal offenses to be resolved is "good cause" was expressly rejected by the Court of Appeals in" *State v. Sasek*, 271 N.C. App. 568 (2020). The Court of Appeals affirmed the trial court's revocation order, concluding that "review of caselaw and our General Statutes has revealed no specific set of factors that must be considered in evaluating whether 'good cause' exists under N.C.[G.S.] § 15A-1344(f)(3)." *State v. Geter* (*Geter II*), 276 N.C. App. 377, 2021-NCCOA-98, ¶ 14. According to the Court of Appeals, *Sasek* was inapplicable to Mr. Geter's case because the trial court in his case did make a finding of "good cause." *Id.* ¶ 12. This Court allowed Mr. Geter's petition for discretionary review on 10 August 2021.

## II.    Standard of Review

¶ 27        "[A]n 'ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact' and should 'be distinguished from the findings of

primary, evidentiary, or circumstantial facts.' " *In re N.D.A.*, 373 N.C. 71, 76 (2019) (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491 (1937)). In contrast to abuse of discretion review, appellate courts reviewing ultimate findings ask whether the trial court's "evidentiary facts reasonably support the trial court's ultimate finding." *State v. Fuller*, 376 N.C. 862, 2021-NCSC-20, ¶ 8 (concluding that a determination of whether a defendant "is a danger to the community" should be reviewed as an "ultimate finding"). But when there is no "rational connection between the basic facts . . . and the ultimate fact," *State v. White*, 300 N.C. 494, 504 (1980) (cleaned up), or the evidentiary findings do not "adequately address" the legal conclusions, *In re N.D.A.*, 373 N.C. at 78, the ultimate fact is not binding on appeal.

## III.    Analysis

¶ 28        Statutory interpretation begins with the text. N.C.G.S. § 15A-1344(f) enumerates three prerequisites that must be present before a trial court can revoke a defendant's probation after expiration of the probationary period. The statute provides that a court

> may extend, modify, or revoke probation after the expiration of the period of probation if all of the following apply:
>
> > (1) Before the expiration of the period of probation the State has filed a written violation report with the clerk indicating its intent to conduct a hearing on one or more violations of one or more conditions of probation.

> (2) The court finds that the probationer did violate one or more conditions of probation prior to the expiration of the period of probation.
>
> (3) The court finds for good cause shown and stated that the probation should be extended, modified, or revoked.

N.C.G.S. § 15A-1344(f) (2021). As the majority notes, this version of the statute omits language appearing in a prior version providing that revocation was permitted if the "State has made reasonable effort to notify the probationer and to conduct the hearing earlier." Act of July 28, 2008, S.L. 2008-129, § 4, 2008 N.C. Sess. Laws 499, 503. That version of the statute read:

> (f) Revocation after Period of Probation. — The court may revoke probation after the expiration of the period of probation if:
>
> > (1) Before the expiration of the period of probation the State has filed a written motion with the clerk indicating its intent to conduct a revocation hearing; and
> >
> > (2) The court finds that the State has made reasonable effort to notify the probationer and to conduct the hearing earlier.

N.C.G.S. § 15A-1344(f) (2007). Notably, the commentary to N.C.G.S. § 15A-1344 did not change when the statute was revised: It provides that "probation can be revoked . . . if a violation occurred during the period and if the court was unable to bring the probationer before it in order to revoke at that time." N.C.G.S. § 15A-1344 Official Commentary.

¶ 29 This case raises two important questions regarding how to interpret this provision of the JRA. First, does N.C.G.S. § 15A-1344(f)(3) require the trial court to enter any evidentiary findings in support of its ultimate determination that good cause exists? Second, does N.C.G.S. § 15A-1344(f)(3) require the State to have made "reasonable effort . . . to conduct the hearing earlier" prior to seeking post-expiration revocation, as the previous version of the statute required? *See* N.C.G.S. § 15A-1344(f)(2) (2007). The majority answers no to both of these questions. I disagree.

¶ 30 In my view, the "shown and stated" language of N.C.G.S. § 15A-1344(f)(3) requires both that the State meet its burden that "good cause" exists and that the trial court state the reasons for which "good cause" exists, rather than simply making an express finding. *See* N.C.G.S. § 15A-1344(f)(3) (2021). Furthermore, although the legislature omitted the "reasonable effort" language in the current statute, trial courts must still consider "reasonable effort" by the State to hold the revocation hearing earlier in determining if "good cause" to revoke exists. The "good cause" language subsumes "reasonable effort" and grants trial courts greater, but not boundless, discretion to consider other factors. This interpretation closely follows the text of the statute and the legislative intent of the Justice Reinvestment Act, which was to limit the ability of trial courts to revoke probation after expiration and to restrict spending on incarceration so that the state could instead invest those resources in community programs to decrease crime.

### A. The "shown and stated" language of N.C.G.S. § 15A-1344(f)(3) requires trial courts to include findings illustrating why "good cause" exists to revoke probation after expiration.

The majority holds that the trial court's "good cause" determination is reviewed for abuse of discretion. This ignores the nature of the good cause inquiry and the statutory text. The JRA provides that trial courts may revoke probation after the probationary period has expired if "[t]he court finds for good cause shown and stated" that it is appropriate to do so. N.C.G.S. § 15A-1344(f)(3). There are two potential readings of the "shown and stated" language. The first gives meaning to all language in § 15A-1344(f)(3). Revoking probation after expiration requires (1) "[t]he court finds" that the State "show[ed]," and thus met their burden, that "good cause" exists; and (2) the court "state[s]" the reasons supporting its determination that "good cause" exists. This reading gives full effect to the statute.

The second reading, which the majority adopts only requires the trial court to find "good cause" without explaining why good cause exists. This reading renders the prefatory language "[t]he court finds" duplicative with the subsequent "shown and stated" language. To read "[t]he court finds" and "shown and stated" as identical conflicts with the principle that statutes "should not be interpreted in a manner which would render any of its words superfluous." *Coffey*, 336 N.C. at 417. Instead, the State must *show* that good cause exists by meeting its burden of demonstrating

good cause at the revocation hearing and the trial court must *state* its explanation by entering findings in support of its ultimate finding that "good cause" exists to revoke after expiration. The statute requires evidentiary findings in support of the ultimate findings of "good cause." Thus, the legislature intended the "shown and stated" language to require trial courts to not only find "good cause" but also to state the reasons why "good cause" exists for revocation.

¶ 33          This Court has previously held that trial courts must make an express finding that "good cause" exists to revoke probation after expiration. *State v. Morgan*, 372 N.C. 609, 613 (2019). A trial court order does not satisfy this requirement simply because evidence exists in the record from which a court may infer "good cause." *Id.* at 616. Instead, we explained that the language of § 15A-1344(f) clearly mandates that the trial court find both that "the probationer did violate one or more conditions of probation" and that there is "good cause shown and stated." *Id.* at 614 (quoting N.C.G.S. § 15A-1344(f) (2017)).

¶ 34          Further, requiring specific findings of fact in "good cause" determinations aligns with the broader purpose of the JRA. The primary goal of the JRA is to "reduce . . . [state] spending on corrections and . . . reinvest the savings in community-based programs" to decrease crime. *State v. Moore*, 370 N.C. 338, 343 (2017) (quoting James M. Markham, *The North Carolina Justice Reinvestment Act* 1 (2012)). Probation revocations account for the largest percentage of North Carolina prison admissions

each year. *See* N.C. Dep't of Pub. Safety, Fiscal Year 2019–2020 Annual Statistical Report 11, https://files.nc.gov/ncdps/FY-2019-20-Annual-Statistical-Report.pdf. An interpretation of the act that would allow trial courts to revoke probation whenever they deem fit would be in tension with the JRA's goals. By contrast, interpreting the JRA to require evidentiary findings to support a good cause determination ensures that courts allow post-expiration revocations only in circumstances where they are truly warranted. Interpreting § 15A-1344(f)(3) in this way also ensures an adequate record for appellate review. By contrast, in concluding that a trial court may simply state that "good cause" exists to revoke, the majority introduces a standard that is virtually unreviewable and enables the State to potentially abuse calendaring of revocation hearings at the expense of defendants. The "shown and stated" language in the statute requires trial courts to illustrate why good cause exists, imposing a necessary guardrail protecting against unnecessary revocations after expiration of the probationary period.

**B. Trial courts must consider whether the State made "reasonable effort" to conduct the hearing prior to revocation in order to determine if "good cause" exists for post-expiration revocation.**

¶ 35        Concluding that trial courts must include findings illustrating why "good cause" exists calls for this Court to give meaning to "good cause." Establishing factors grounded in the interpretation and legislative intent of § 15A-1344(f) will enable trial courts to apply the statute uniformly in a way that provides defendants notice as to

what constitutes "good cause." The statute does require the State to show and the trial court to state that the State made "reasonable effort" to hold the hearing earlier. Finally, because the legislature did broaden the statutory language from "reasonable effort" to "good cause," trial courts are also free to consider other relevant factors or scenarios. "Good cause" subsumes, but is not limited to, a "reasonable effort" analysis.

¶ 36        When a trial court fails to make an express finding of "good cause," a reviewing court will vacate an order revoking probation unless the record includes sufficient evidence that may enable a court to conclude "good cause" exists on remand. *Morgan*, 372 N.C. at 618. And the Court of Appeals concluded in *Sasek* that "the record [must] contain[ ] sufficient evidence to permit the necessary findings of 'reasonable efforts' by the State to have conducted the probation revocation hearing earlier" to warrant remand. 271 N.C. App. at 575 (quoting *Morgan*, 372 N.C. at 618). Although *Sasek* is not binding on this Court, *Sasek* interpreted the latter version of the statute—the one at issue here—and we did not allow further review of that case. At a minimum, *Sasek* indicates that as of 2020, the Court of Appeals believed that the new version of the JRA incorporated its predecessor's requirement that the State undertake "reasonable effort" for a good cause determination to be warranted.

¶ 37        Creating factor tests to guide trial courts in applying the law is often necessary to give effect to criminal statutes in a manner that comports with the rights of criminal defendants and avoids vagueness. In North Carolina, a statute is void for

vagueness where "men of common intelligence must necessarily guess at its meaning and differ as to its application." *In re Burrus*, 275 N.C. 517, 531 (1969). Additionally, the language of the statute must provide a defendant with sufficient notice as to what criminal conduct the statute seeks to punish. *State v. Elam*, 302 N.C. 157, 162 (1981).

¶ 38        The Court of Appeals' ruling potentially conflicts with the foundational constitutional principles of due process and equal protection by approving statutory vagueness. If there is "no specific set of factors that must be considered" within a trial court's "good cause" determination, then trial courts enjoy functionally unbridled discretion to make this determination "on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 109.

¶ 39        Indeed, the circumstances here illustrate the potential for inconsistent or arbitrary applications of the "good cause" requirement absent further guidance. The State conceded at the revocation hearing that it made no effort to hold the hearing earlier, instead opting to "wait and see" what happened to the underlying charges. At first glance, this explanation seems reasonable enough: a conviction on the underlying charges would likely *support* the State's case for probation revocation, while a dismissal or acquittal of these charges would weigh *against* probation revocation. The trial court acknowledged this approach when it stated that "it is clear to the [c]ourt that the State waited until disposition of the underlying offenses alleged

before proceeding with the probation violation." The trial court likewise relied upon this "wait and see" approach in its "good cause" determination: It found "that this does constitute good cause in that . . . *if for whatever reason the State had opted to dismiss the charges*, that it would have had a direct impact on the later hearing of the probation violation." (Emphasis added).

¶ 40       But this finding is squarely contradicted by what *actually happened* here: The State *did* dismiss the underlying charges against Mr. Geter, but the dismissal had *no* impact on the later hearing of the probation violation. That is, despite the dismissal of the underlying charges that supposedly influenced the State to "wait and see," the State nevertheless forged ahead with seeking the post-expiration revocation of Geter's probation. Under this "heads I win, tails you lose" framework approved by the majority opinion today, the mere fact of pending underlying charges against a defendant could *always* constitute "good cause," *regardless of the outcome of those charges*. This result is prohibited by the plain language of N.C.G.S. § 15A-1344(f) itself, which enumerates the "good cause" determination required by subsection (f)(3) as a separate and distinct prerequisite from the mere fact "that the probationer did violate one or more conditions of probation prior to the expiration of the period of probation" required by subsection (f)(2). Finally, if, as the majority opinion observes, the State "likely felt confident that the same evidence, deemed excluded at defendant's criminal trial, could very well satisfy the trial court that defendant had

committed new criminal offenses while on probation under a less demanding standard," then the State would have absolutely no reason to delay defendant's probation revocation hearing until after the underlying charges were resolved; it could have presented that evidence to the trial court independently of the trial on the underlying charges. Instead, Geter's probation revocation hearing was delayed until 399 days after his probation expired, constituting a "significant and unadvisable [delay] in the administration of justice." *Geter*, 2021-NCCOA-98, # 15.

¶ 41 These inconsistencies illustrate why, contrary to the ruling of the Court of Appeals below, there must be *some* "specific set of factors that must be considered in evaluating whether 'good cause' exists under [N.C.G.S.] § 15A-1344(f)(3). The responsibility for establishing those factors falls on the shoulders of this Court. While the majority opinion generally acknowledges that a trial court's discretion in this matter must not be exercised arbitrarily but only in accordance with fixed legal principles, it stops short of addressing the Court of Appeals' sweeping ruling and providing the necessary, more specific guidance about what "fixed legal principles" a trial court must consider. In my view, the high stakes of post-expiration probation revocation and the language of N.C.G.S. § 15A1344(f)(3) require this Court to do so. Indeed, "where a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will, and the courts will interpret

the language to give effect to the legislative intent." *In re Banks*, 295 N.C. 236, 239 (1978).

¶ 42        As Mr. Geter correctly notes, this Court has established multifactor tests to give meaning to criminal statutes on numerous occasions, thus avoiding vagueness and providing defendants with sufficient notice. Such instances include *State v. Tolley*, 290 N.C. 349, 368 (1976), where we adopted factors to determine if a defendant should be shackled at trial; *State v. Barden*, 356 N.C. 316, 339 (2002), which announced voluntary confession factors; and *State v. Spivey*, 357 N.C. 114, 118 (2003), which established speedy trial factors. By creating factors that trial courts may consider in determining "good cause," we can ensure uniform and clear applications of N.C.G.S. § 15A-1344(f)(3) consistent with all constitutional requirements.

¶ 43        Specifically, the statutory text, structure, purpose, and context, as well as foundational constitutional principles dictate that a trial court engaging in a "good cause" determination under N.C.G.S. § 15A-1344(f)(3) consider within its discretion: (1) the State and the court's ability or inability to hold the probation revocation hearing in a timely manner; (2) the length of the delay between the alleged act warranting probation revocation and the subsequent hearing; and (3) the efforts made by the State or the court to conduct an earlier probation hearing. In my view, requiring consideration of these factors would properly honor the statutory text, purpose, and constitutional limitations while still affording the trial court broad and

necessary discretion in making this fact-intensive determination. Indeed, in addition to criminal defendants and the State, trial courts themselves could also benefit from this guidance by gaining statutory and constitutional landmarks to orient their discretionary ruling. Without providing this guidance, and without establishing any "specific set of factors that must be considered," this Court allows trial court discretion to functionally undermine the statute's purpose and foundational constitutional principles.

¶ 44        Establishing a "good cause" requirement that does not mandate finding substantive content such as "reasonable effort" effectively invalidates § 15A-1344(f) for vagueness. Adopting the majority's position that "good cause" must simply be written and neither illustrated nor explained by finding that the State made "reasonable effort" to hold the revocation hearing earlier grants trial courts unreviewable discretion and does not put probationers on notice as to what establishes "good cause." Trial courts' application of the statute may vary widely, effectively preventing defendants from anticipating what may constitute "good cause" and from building arguments that "good cause" does not exist. Recognizing that the current version of the Justice Reinvestment Act incorporates the "reasonable effort" framework into its "good cause" requirement establishes workable guidelines for trial courts and clarifies the statutory requirements of § 15A-1344(f).

¶ 45        Interpreting "good cause" as subsuming "reasonable effort" aligns with the official commentary to § 15A-1344. The exact language states: "probation can be revoked . . . if a violation occurred during the period and if the court was unable to bring the probationer before it in order to revoke at that time." N.C.G.S. § 15A-1344 Official Commentary. Because the legislature preserved the commentary, we must construe it as applicable to the "good cause" requirement. *See Wing v. Goldman Sachs Tr. Co., N.A.*, 382 N.C. 288, 2022-NCSC-104, ¶ 54 ("When the legislature explicitly instructs the revisor of statutes to print the commentary with the statute, such reliance appears particularly appropriate." (citation omitted)). The clear language of this guidance implies that the trial court should find the State could not bring in the defendant prior to revocation.

¶ 46        The "reasonable effort" factor analysis also makes sense of the Court of Appeals ruling in *Sasek*. Although the opinion is not binding on this Court, is important because the Court of Appeals concluded that, in order for a reviewing court to remand, it must hold "sufficient" evidence exists in the record "to permit the necessary findings of 'reasonable efforts' by the State to have conducted the probation revocation hearing earlier." *Sasek*, 271 N.C. App. at 575 (quoting *Morgan*, 372 N.C. at 618). Moreover, *Sasek* suggests that the crucial question in determining "good cause" is whether the State made reasonable effort to conduct the hearing earlier. If appellate courts review the record for "reasonable effort" in deciding whether to

vacate or remand, trial courts should be required to establish such findings in their order to support "good cause."

¶ 47        "Good cause" must encompass, but is not limited to, the "reasonable effort" analysis. The previous version requires that the court "finds that the State has made reasonable effort to notify the probationer and to conduct the hearing earlier." Act of July 28, 2008 § 4. Although the majority and the State are correct that the legislature omitted the "reasonable effort" language in the updated statute, this omission cannot grant trial courts unlimited discretion because the legislature also added the "good cause" requirement. Replacing the "reasonable effort" language with "good cause" does widen what trial courts may consider in determining "good cause," but it is still a limit on when trial courts can revoke after expiration. The legislature intended the statute and the Justice Reinvestment Act to limit the possibility of revocation after expiration, limit the activation of sentences, and thus limit state spending on incarceration. "Good cause" should be read in accordance with this intent as requiring the State to show and for the trial court to state a finding that the State made "reasonable effort" to bring the probationer in earlier.

**C. Remand is necessary to determine if delaying Mr. Geter's probation revocation hearing until after the disposition of his underlying criminal charges constitutes "good cause."**

¶ 48        Interpreting "good cause" as subsuming "reasonable effort" but leaving room for additional considerations in a trial court's determination enables defendants to

still have the option of acquiescing or delaying their probation revocation hearing until the disposition of their underlying charges. However, the disposition of those charges should affect the outcome of the probationary hearing. If a Court finds "good cause" shown and stated because the State and the defendant *both* agreed to wait until the disposition of the underlying charges, that disposition must affect the trial court's exercise of discretion. Otherwise, there is no true "good cause" for delaying the hearing.

¶ 49          Although waiting to proceed with a revocation until after the disposition of underlying charges would ideally limit the number of total revocations, a blanket policy, like that of Buncombe County's, has the potential to harm defendants, such as Mr. Geter, whose underlying charges have been dismissed or acquitted and yet are still the subject of revocation hearings. Simply put, trial courts cannot allow for the delay of probation revocation hearings until after the disposition of underlying charges only to revoke probation despite the dismissal or acquittal of those charges and still rule within the limiting parameters of the "good cause" requirement and the Justice Reinvestment Act.

¶ 50          Our precedents provide some context regarding what constitutes sufficient evidence of "reasonable effort" by the State sufficient for remand to be appropriate. In *Morgan*, this Court was "unable to say from our review of the record that no evidence exists that would allow the trial court on remand to make a finding of 'good

cause shown and stated.' " *Morgan*, 372 N.C. at 618. Evidence to support our holding included a notice of revocation hearing with a scheduled date before the expiration period and remarks from the defendant's counsel addressing the defendant's significant mental health issues and inability to comply with terms of probation or appear in court. *Id.* at 611. *Bryant* suggests that neither a "failed scheduling effort alone" nor a defendant's medical condition causing difficulty in scheduling is sufficient "to support a finding of reasonable efforts." *Bryant*, 361 N.C. at 104. Finally, the Court of Appeals holding in *Sasek* suggests that when the record shows there was a hearing initially scheduled prior to expiration but does not explain why it did not take place, the matter does not warrant remand. *Sasek*, 271 N.C. App. at 576.

¶ 51          Buncombe County's blanket policy of delaying probation revocation hearings until after the disposition of underlying charges alone cannot constitute "good cause." The policy does not demonstrate that the State made "reasonable effort" to hold the hearing earlier. In fact, it supports the notion that the State purposefully wanted to delay the proceeding simply because it was inconvenient to the State to hold it earlier. In the trial transcript, the State noted that it is typical practice to wait until the disposition of underlying charges because if they "tried to hold hearings before probation expired, 'we would be having hearings all the time.' " The State's inability to accommodate probation hearings adequately and fairly in a timely manner cannot,

on its own, be held against defendants facing the possibility of revocation after the expiration of the probationary period.

¶ 52        However, in Mr. Geter's case, there is enough evidence in the record that the State made "reasonable effort" to conduct the hearing earlier to warrant remand for the trial court to determine if "good cause" exists. Unlike in *Bryant* and *Sasek*, the State's testimony suggests Mr. Geter acquiesced or potentially agreed for the "probation matter to be continued to afford [him] an opportunity to have his trial." Additionally, there was significant restraint on the State's ability to hold Mr. Geter's revocation hearing earlier, which explains the failed scheduling efforts and further delays: Buncombe County only holds one criminal session per week and probation hearings only once every two weeks. In tandem with Mr. Geter's agreement to delay the revocation hearing, the State's calendaring restrictions support a remand; however, the latter would be likely insufficient alone. *See Bryant*, 361 N.C. at 104 (holding a "failed scheduling effort alone" does not constitute sufficient evidence to warrant remand).

¶ 53        On remand, this case warrants serious consideration of two facts to determine if "good cause" existed to revoke Mr. Geter's probation. First, despite the State's statements that "99 percent of the time, if the underlying evidence is suppressed or charges dismissed, the [S]tate does not pursue the revocation," the State still pursued, and the trial court granted, the revocation of Mr. Geter's probation. The

delay to allow Mr. Geter the "opportunity to have his trial" had zero impact on his revocation hearing and should not constitute "good cause." Second, Mr. Geter had violated other conditions of his parole, such as completing required community service hours and his GED, for which the State could have pursued modification or extension of his probation, yet the State instead pursued revocation on the basis of criminal conduct. The State had every opportunity to extend, modify, or revoke Mr. Geter's probation prior to expiration, yet decided to wait 806 days total to do so.

¶ 54        Ultimately, if the State, with a defendant's agreement, waits to proceed with revocation until after disposition of underlying charges, the disposition should have an impact on the trial court's determination of "good cause." Asking defendants to wait until well after their probationary period expires and then revoking their probation regardless of the fact that their underlying charges have been dismissed or acquitted is "significant and unadvisable in the administration of justice." *Geter II*, ¶ 15.

## IV.    Conclusion

¶ 55        Requiring trial courts to make express findings of fact that demonstrate why "good cause" exists to revoke probation after expiration will limit such instances of extreme delay. This requirement is consistent with the text of § 15A-1344(f) and the purposes of the Justice Reinvestment Act. The majority errs by failing to enforce the statutory guardrails, such as requiring trial courts to illustrate why "good cause"

exists, and to consider the factor of "reasonable effort" by the State to conduct the hearing earlier, which impose a crucial limit on the ability of trial courts to revoke probation after expiration of the probationary period. Because there is evidence in the record of this case to suggest "reasonable effort" by the State exists, this matter should be remanded.

Justice HUDSON joins in this dissenting opinion.